JEREMIAH P. HEALY, as Administrator, etc., of RAYMOND B. HEALY, Deceased, Respondent, *v.* THE ERIE RAILROAD COMPANY, Appellant.

Fourth Department, June 30, 1931.

*George D. Newton,* for the appellant.

*Francis E. Cullen,* for the respondent.

TAYLOR, J. In its Rochester yards one of defendant's tracks, called the " lead track," ran north and south near the river. Track No. 5 lay immediately alongside and west of it and came into it southerly at switch No. 5. On November 8, 1924, late enough in the afternoon so that it was dark, a train of about nine cars was on track 5, the northernmost car of which was loaded with grapes. The train crew consisted of Barrett, yard conductor, plaintiff's intestate, Raymond B. Healy, rear brakeman, and others. A car movement was to be carried on thus: A locomotive hitched on the south end of this string of cars was to pull it south till the grape car cleared switch No. 5 some distance. The next operation was to get the train under motion toward the north, cut off the grape car, stop the rest of the train, allow the grape car to run past the switch, turn the switch and run the rest of the cars back on track No. 5.

From switchpoint 5 it was slightly up grade for about two car lengths to a pinnacle which was called the " hump.", The idea was to " kick " this grape car far enough north so that the northern- most car on the train would clear the grape car when the train was pushed back north on track No. 5. The forward movement was started, the grape car cleared the switch, Healy shifted the switch, signaled Barrett, the conductor, " All right," and climbed up the easterly side of the then northernmost car at its north corner. The grape car was not kicked far enough, and when the car upon which Healy was riding reached it their corners collided and Healy was caught in between and crushed so that he died shortly. Plain- tiff has recovered a judgment of $5,000. The action was under the Federal Employers' Liability Act, it being an interstate com- merce transaction, and $4,000 was allotted to decedent's father and $1,000 to his mother.

Healy had had some experience as a railroad man, and had worked three or four nights before this in this yard at this kind of work.

Several points have been raised by appellant, the discussion of which we deem unnecessary, since we have reached the conclusion that plaintiff has failed to sustain his burden of proving that defend- ant was guilty of any negligence proximately causative — wholly or in part — of the mishap.

Barrett, yard conductor for defendant that night, Sylvester T. Cullen, another yard conductor, Stephen J. Spellman, the locomotive engineer, and Charles A. Sholes, another yard brakeman, all testified as witnesses for plaintiff; and under the usual rule he vouched for their credibility. From the testimony of these witnesses, giving the best intendments to plaintiff where they belong, this state of facts is presented: " The accident was at 6.45 P. M., Nov. 8, 1924, on a dark night. We were giving lantern signals. A car would have to be two car lengths from the switchpoint before it cleared. It is a slight rise, some grade, from the switchpoint northerly to the ' hump.' At the time of the movement Barrett was on the east side, the same side as Healy. The next movement after kicking the grape car was to kick one back into No. 5, which Healy was to ride. Barrett said to Healy, ' When the car of grapes goes to clear, throw the switch and ride the four cars back into Lead 5.' It is not easy to determine by the eye whether a car is in the clear or not if the clearance is close. I [Barrett] do not remember ever warning Healy that there was an upgrade just north of Switch No. 5. After the car of grapes was kicked in on the lead, no one set the brakes on it or put a block under the wheels. The only precaution I took was to tell this man [Healy] to watch it clear and when it cleared to let me back on the other track. The

car did not clear Track 5 at all, and it was this lack of clearance that caused the accident. It did not lack over six inches of clearing. It is understood that you won't give a signal until the tracks clear one another. It is an understood fact amongst railroad men that you won't. This same operation that was being had at the time of the accident was the same as those which had taken place the other nights that Healy had worked there. There was nothing to prevent Healy from going up on top of the car to avoid any question of clearance. The cars were standing still, and I gave no signal to the engineer to move the cars until I had received this signal and heard those words ['All right'] from Healy. In cold weather the journal boxes are stiffened up and cars will not sag but will stand where they stop when it is cold. So far as the movement of the car was concerned, I handled it alone, that is, when it (the train going north) got to a spot which I thought was enough to cut off the car, I signalled the engineman to stop. I was the judge of how fast the car should be going when the cut was made in order to kick it over the grade on the lead, and I did not give the car a hard enough kick, that is why it did not run. If Healy had wanted to, there was nobody hurrying him, he could have got on top of the car and nothing would have moved until we got his signal and we could have seen him on top of the car before the train was started. Apparently what happened was that Healy got on after it had started. Healy was the sole judge of whether the car had cleared or not. I did not give a signal to start the car until I had received one from Healy."

From this testimony we regard the only reasonable conclusions to be (1) that the responsibility for kicking this grape car north hard enough to place it in a position such that the rest of the train would clear it on its return north upon track No. 5, rested entirely on Barrett and the engineer; (2) that " clearance " meant that the grape car would be far enough north so that the rest of the train would not touch it in its progress north on track No. 5; (3) that decedent had had sufficient experience and instruction to know what his duties were and to realize what occurred practically in these train movements and how they were accomplished; (4) that it was the duty of Healy alone (a) to observe when a car in such a movement reached " clearance," and (b) not to signal for a return movement until clearance was assured; (5) that by his own volition decedent placed himself in a position of peril in his work when he had the option of stationing himself in a position of safety; (6) that there is no testimony that this grape car " sagged back " or ran to the southward after it was pushed toward the north.

We are, therefore, of the opinion that a finding of causative negligence in defendant and that the death of decedent did not result solely from his own carelessness and assumption of risk was against the weight of the evidence, and that the judgment and order appealed from should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.